# EXHIBIT 1

## SUPPLEMENTAL FUNDING AND SETTLEMENT AGREEMENT

This SUPPLEMENTAL FUNDING AND SETTLEMENT AGREEMENT (this "Agreement") is entered into as of this 24th day of June, 2005, by and among SGP Acquisition, LLC, debtor and debtor in possession (the "Debtor"), the Official Committee of Unsecured Creditors in the chapter 11 case of the Debtor (the "Committee"), The Provident Bank (the "Bank"), Kimolos II, L.P. ("Kimolos"), Zapis Capital ("Zapis") and Benesch, Friedlander, Coplan & Aronoff LLP ("Benesch").

### RECITALS

WHEREAS, the Debtor filed a complaint against Dunlop Slazenger and its affiliates in December 2004, alleging various breach of contract, tort and other causes of action (the "Dunlop Litigation");

WHEREAS, the Debtor has entered into a settlement of, among other things, the Motion for an Order Under 11 U.S.C. § 1112(b) Converting Chapter 11 Case to a Case Under Chapter 7 filed by Dunlop Slazenger, Motion of Slazenger for Relief from the Automatic Stay filed by Dunlop Slazenger and two preference actions filed by the Debtor against Dunlop Slazenger and its affiliates, but not the Dunlop Litigation (the "Dunlop Settlement");

WHEREAS, the parties hereto have agreed, subject to the terms and conditions hereof, what portion of the Dunlop Settlement proceeds will be paid to the Debtor's estate on account of the preference actions and what portion of the Dunlop Settlement proceeds were on account of the collateral securing the Bank's claims;

WHEREAS, Benesch has agreed to defer its administrative claim in excess of the carve-outs, subject to the terms and conditions hereof;

WHEREAS, Kimolos and Zapis have agreed to subordinate their administrative claims, subject to the terms and conditions hereof;

WHEREAS, the Bank has agreed to release its security interest on the proceeds of the Dunlop Litigation payable to the Debtor's estate hereunder, subject to the terms and conditions hereof;

WHEREAS, Kimolos has agreed that Kimolos or its designee will provide $300,000 of supplemental post-petition financing to the Debtor, subject to the terms and conditions hereof;

NOW, THEREFORE, in consideration of the foregoing, the covenants and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1

CH\770525.1

SECTION 1. **Provident Amendment and Partial Release of Lien.**

The parties hereto shall support the approval by the Bankruptcy Court of the proposed amendment (the "Provident Amendment") to the Final Order (a) Authorizing Post-Petition Financing on a Superpriority Basis Under Section 364 of the Bankruptcy Code, (b) Use of Cash Collateral Under Section 363 of the Bankruptcy Code and (c) Granting Adequate Protection Under Sections 361 and 363 of the Bankruptcy Code (the "Provident Financing Order"), and the Bank shall fund the amounts, including the professional fee carve-outs, therein, on the terms and conditions therein. The Bank hereby releases its pre-petition and post-petition liens and security interests, including any liens or security interests granted under the Provident Financing Order, on the portion of the Dunlop Litigation proceeds payable to the Debtor's estate hereunder.

SECTION 2. **Cash Proceeds of Dunlop Settlement.**

The first $285,000 of cash proceeds of the Dunlop Settlement shall be paid to the Debtor's estate and used to pay administrative claims in excess of the professional fee carve-outs. The remaining cash proceeds of the Dunlop Settlement shall be paid to the Bank and applied to the Debtor's obligations to the Bank on the terms set forth in the Provident Financing Order.

SECTION 3. **Payment and Deferral of Administrative Claims.**

The Debtor shall promptly pay any amounts due for all allowed administrative claims for professional fees and expenses from, first, the professional fee carveouts provided in any approved post-petition financing for the Debtor and, second, from the $285,000 of cash proceeds of the Dunlop Settlement under section 2 hereof; provided, however, that if there are insufficient funds from such sources to pay all such allowed administrative claims in full, Benesch agrees to defer the payment of its allowed professional fees and expenses that remain after the exhaustion of such sources and to have such remaining fees and expenses paid from that portion of the proceeds of the Dunlop Litigation, if any, paid to the Debtor's estate pursuant to section 4 hereof.

2

CRV770523.1

SECTION 4. **Kimolos Supplemental Financing.**

Kimolos agrees that Kimolos or its designee shall provide the Debtor's estate with $300,000 of supplemental post-petition financing (the "Supplemental Financing") for the purposes of paying the costs of administration of the Debtor's estate after termination of the Provident Financing Order as amended by the Provident Amendment and paying the costs of the Dunlop Litigation. Kimolos or its designee, the Debtor and the Committee shall agree on a budget pursuant to which the supplemental financing shall be used by the Debtor's estate and shall have the right, by written agreement, to alter, amend or extend the budget or increase the total principal amount of the Supplemental Financing. Kimolos or its designee shall be entitled to receive interest at the prime rate published in the Wall Street Journal plus 3 percent per annum and a fee payable from the proceeds of the Dunlop Litigation after the principal and interest on the Kimolos Supplemental Financing is paid in full from such proceeds, as follows:

(a) The first $65,000 of the proceeds of the Dunlop Litigation after payment of the Kimolos principal and interest shall be paid to the Debtor's estate, free and clear of liens.

(b) Kimolos or its designee shall receive the greater of 75% or the Kimolos Pro Rata Share of the next proceeds until the obligations of Kimolos under the Kimolos guarantee of the Debtor's pre-petition and post-petition obligations to the Bank (the "Kimolos Guarantee") are paid in full. The Debtor's estate shall receive the remainder of such next proceeds, free and clear of liens. "Kimolos Pro Rata Share" shall mean, as of the date of receipt of the Dunlop Litigation proceeds, the obligations under the Kimolos Guarantee divided by the sum of the obligations under the Kimolos Guarantee plus the aggregate amount of unpaid administrative claims.

(c) Kimolos or its designee shall receive 50% of the remaining proceeds of the Dunlop Litigation. The Debtor's estate shall receive the other 50% of the remaining proceeds of the Dunlop Litigation, free and clear of liens.

SECTION 5. **Settlement of Dunlop Litigation**

Kimolos or its designee, the Debtor and the Committee must agree to any settlement of the Dunlop Litigation that will provide an aggregate recovery to unsecured creditors of less than $1 million. Kimolos or its designee, in its sole discretion, may cause the Debtor to enter into any settlement that will provide an aggregate recovery to unsecured creditors of $1 million or more.

SECTION 6. **Zapis/Kimolos Subordination of Administrative Claims**

Zapis and Kimolos, on behalf of themselves and their affiliates, hereby subordinates all administrative claims against the Debtor's estate to all allowed claims of all other creditors of the Debtor's estate; provided, however, that this subordination shall not be deemed a subordination of any subrogation claims under the Kimolos Guarantee, any claims under the Supplemental Financing or any equity interests of Zapis, Kimolos or their affiliates.

SECTION 7. **Governing Law.**

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS (AS OPPOSED TO CONFLICTS OF LAWS PROVISIONS) OF THE STATE OF DELAWARE.

3

CH\770525.1

SECTION 8. Headings.

Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purposes.

SECTION 9. Construction.

This Agreement and all other agreements and documents executed in connection therewith have been prepared through the joint efforts of all of the parties. Neither the provisions of this Agreement or any such other agreements and documents nor any alleged ambiguity shall be interpreted or resolved against any party on the ground that such party's counsel drafted this Agreement or such other agreements and documents, or based on any other rule of strict construction. Each of the parties hereto represents and declares that such party has carefully read this Agreement and all other agreements and documents executed in connection therewith, and that such party knows the contents thereof and signs the same freely and voluntarily. The parties hereby acknowledge that they have been represented by legal counsel of their own choosing in negotiations for and preparation of this Agreement and all other agreements and documents executed in connection therewith and that each of them has read the same and had their contents fully explained by such counsel and is fully aware of their contents and legal effect.

SECTION 10. Counterparts.

This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart. Any party hereto may execute and deliver a counterpart of this Agreement by delivering by facsimile transmission a signature page of this Agreement signed by such party, and any such facsimile signature shall be treated in all respects as having the same effect as an original signature. Any party delivering by facsimile transmission a counterpart executed by it shall promptly thereafter also deliver a manually signed counterpart of this Agreement.

SECTION 11. Further Assurances.

The parties hereto agree to take all further actions and execute all further documents as are reasonably necessary to carry out the transactions contemplated by this Agreement, including seeking and supporting prompt Bankruptcy Court approval hereof.

SECTION 12. Effectiveness.

This Agreement shall become effective at the time that all of the following conditions precedent have been met (the "Effective Date"):

(a) Agreement. This agreement shall have been fully executed.

(b) Bankruptcy Court Approval. The Bankruptcy Court shall have entered an order approving the Provident Amendment, the Supplemental Financing and the other terms and conditions of this Agreement on or prior to July 31, 2005.

### SECTION 13. Waiver Of Jury Trial.

EACH OF THE PARTIES HERETO WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY CLAIM, COUNTERCLAIM, ACTION OR OTHER PROCEEDING ARISING UNDER OR RELATING TO THIS AGREEMENT.

5

CR\770525.1

06/26/2005  19:32    2                    L&W MEETING                    PAGE  07/11

26 Jun 05 22:26    Steve Todd           020 7823 4484         p.1

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of the date first written above.

SGP ACQUISITION, LLC

By: _____
Name: RICHARD P. BARGERMO
Title: CEO

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THE CHAPTER 11 CASE OF SGP ACQUISITION, LLC

By: _____
Name: JOHN F. ATHANAS
Title: Attorney

THE PROVIDENT BANK

By: _____
Name: _____
Title: _____

KIMOLOS II, L.P.

By: _____
Name: _____
Title: _____

CH\7763.1

06/26/2005  19:32    2                         LAW MEETING                          PAGE  08/11
   06/24/05  FRI 15:22 FAX 216 222 3053    NCB SPECIAL CREDIT ADMIN                      ☒007

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of the date first written above.

SGP ACQUISITION, LLC

By: _____
   Name: _____
   Title: _____

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THE CHAPTER 11 CASE OF SGP ACQUISITION, LLC

By: _____
   Name: _____
   Title: _____

THE PROVIDENT BANK

By: *[signature]*
   Name: Sharon L Rader
   Title: Vice President

KIMOLOS II, L.P.

By: _____
   Name: _____
   Title: _____

CH\770525.1

06/26/2005 19:32   2                    L&W MEETING                         PAGE 09/11
   JUN-27-2005 08:46       ZAPIS CAPITAL GROUP                                P.02

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of the date first written above.

SGP ACQUISITION, LLC

By:_____
   Name:_____
   Title:_____

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THE CHAPTER 11 CASE OF SGP ACQUISITION, LLC

By:_____
   Name:_____
   Title:_____

THE PROVIDENT BANK

By:_____
   Name:_____
   Title:_____

KIMOLOS II, L.P.

By: *[signature]*
   Name: Lee Zapis
   Title: The Representative

ZAPIS CAPITAL

By: _____
   Name: _____
   Title: _____

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

By: _____
   Name: _____
   Title: _____

ZAPIS CAPITAL

By: _____
   Name: _____
   Title: _____

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

By: */s/ Mark A. Phillips*
   Name: MARK A. PHILLIPS
   Title: PARTNER

CH\770525.1

# EXHIBIT 2

Case 1:05-cv-00688-GMS     Document 1-3     Filed 09/20/2005     Page 12 of 14

**Slazenger Golf Products**
Cash Collateral Budget

| | WE 10/8/2005 | WE 10/15/2005 | WE 10/22/2005 | WE 10/29/2005 | WE 11/5/2005 | WE 11/12/2005 | WE 11/19/2005 | WE 11/26/2005 | WE 12/3/2005 | WE 12/10/2005 | WE 12/17/2005 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Receipts | - | 42,668 | - | - | - | - | 42,668 | - | - | - | 42,668 |
| **Disbursements** | | | | | | | | | | | |
| Professional Fees - Special Litigation Counsel | - | - | - | - | - | - | - | 10,000 | - | - | - |
| Professional Fees - Debtor Counsel | 10,000 | - | - | - | - | - | - | 5,000 | - | - | - |
| Professional Fees - Committee Professionals | - | - | - | - | - | - | - | - | - | - | - |
| Expenses of Lender | - | - | - | - | - | - | - | - | - | - | - |
| Salaries | - | 7,900 | - | 7,900 | - | 5,900 | - | 5,900 | - | 5,900 | - |
| Health Care Benefits | - | 750 | - | - | - | 750 | - | - | - | 750 | - |
| Payroll Taxes | - | 604 | - | 604 | - | 451 | - | 451 | - | 451 | - |
| Office Rent | - | - | - | - | - | - | - | - | - | - | - |
| Leases | - | - | - | - | - | - | - | - | - | - | - |
| Office Expenses | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Insurance | - | - | - | - | - | - | - | - | - | - | - |
| Travel & Entertainment | 1,000 | - | - | - | - | - | - | - | - | - | - |
| US Trustee Fees | 3,750 | - | - | - | - | - | - | - | - | - | - |
| Interest | - | - | - | - | 236 | - | - | 716 | - | - | - |
| Total Disbursements | 14,950 | 52,122 | 200 | 8,704 | 436 | 6,551 | 43,618 | 21,551 | 916 | 6,551 | 43,618 |
| Cash Flow | (14,950) | (52,122) | (200) | (8,704) | (436) | (6,551) | (43,618) | (21,551) | (916) | (6,551) | (43,618) |
| Supplemental Financing | - | - | - | - | - | - | - | - | - | - | - |
| Beginning Balance | - | 14,950 | 67,072 | 67,272 | 75,977 | 76,413 | 82,964 | 126,582 | 148,134 | 149,050 | 155,601 |
| Net Cash Flow | 14,950 | 52,122 | 200 | 8,704 | 436 | 6,551 | 43,618 | 21,551 | 916 | 6,551 | 43,618 |
| Ending Balance | 14,950 | 67,072 | 67,272 | 75,977 | 76,413 | 82,964 | 126,582 | 148,134 | 149,050 | 155,601 | 199,219 |

Office expenses include telephone, communication, supplies, postage and other.

**Slazenger Golf Products**
Cash Collateral Budget

| | WE 12/24/2005 | WE 12/31/2005 | WE 1/7/2006 | WE 1/14/2006 | WE 1/21/2006 | WE 1/28/2006 | Total |
|---|---|---|---|---|---|---|---|
| Receipts | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | |
| Professional Fees - Special Litigation Counsel | - | - | - | - | 42,668 | - | 170,872 |
| Professional Fees - Debtor Counsel | - | 10,000 | - | - | - | 10,000 | 30,000 |
| Professional Fees - Committee Professionals | - | 5,000 | - | - | - | 5,000 | 15,000 |
| Expenses of Lender | - | - | - | - | - | - | 10,000 |
| Salaries | 5,900 | - | 5,900 | - | 5,900 | - | 51,200 |
| Health Care Benefits | - | - | - | - | 750 | - | 3,000 |
| Payroll Taxes | 451 | - | 451 | - | 451 | - | 3,917 |
| Office Rent | - | - | - | - | - | - | - |
| Leases | - | - | 3,750 | - | - | - | 7,500 |
| Office Expenses | 200 | 200 | 200 | 200 | 200 | 200 | 3,400 |
| Insurance | - | - | 1,000 | - | - | - | 1,000 |
| Travel & Entertainment | - | - | - | - | - | 1,000 | 2,000 |
| US Trustee Fees | - | - | - | - | - | - | 7,500 |
| Interest | - | - | 1,358 | - | - | - | 2,311 |
| Total Disbursements | 6,551 | 15,200 | 12,659 | 200 | 49,969 | 16,200 | 300,000 |
| Cash Flow | (6,551) | (15,200) | (12,659) | (200) | (49,969) | (16,200) | (300,000) |

Office expenses include telephone, communication, sup

**Supplemental Financing**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Beginning Balance | 199,219 | 205,771 | 220,971 | 233,630 | 233,830 | 283,800 | - |
| Net Cash Flow | 6,551 | 15,200 | 12,659 | 200 | 49,969 | 16,200 | 300,000 |
| Ending Balance | 205,771 | 220,971 | 233,630 | 233,830 | 283,800 | 300,000 | 300,000 |